Case number 18-1315, Henry Mary Spears et al. Petitioners, Mr. Hellman for the Petitioners, Miss Tarrant, Respondent, United States. Good morning. Good morning, Your Honor. Matthew Hellman for the Petitioners, and thank you, and may it please the Court. General John Baker is the second highest-ranking lawyer in the Marine Corps. Military Commission Rule 505 expressly gives him the authority to excuse Assistant Defense Counsel upon their application for withdrawal. The Secretary of Defense charged with administering those rules amended that rule to remove the express prior requirement that military judges must approve excusals. When the Military Commission overrode the General's determination in this case, it exercised a power that it did not have, and it forced Petitioners to engage in a representation from which General Baker concluded they were entitled to withdraw from. Mandamus is the appropriate remedy, and that's for that violation. I want to make three points today in that regard. First, the text, structure, and history of Rule 505 unmistakably does not have something sort of preliminary. Is it my understanding that Mr. al-Nashiri has a new defense team in place? My understanding is that additional members have joined that team. Why this dispute, then? Is there any sense that Spears and Eliade are going to be forced to go back there? There's a new team. Well, I understood the government took it. Are you just asking for an advisory opinion here? That we weigh in on the way these two authorities interact? I appreciate it. When we don't need to because there's a new defense team in place? I appreciate the question, and the government's brief in this case suggested, in fact, that it might even support that subsequent motion to withdraw. However, that would not provide the relief that we are seeking in this case for two very important reasons. Of course, obviously our contention to this Court is that as General Baker, as Chief Defense Counsel, who is the decider, but even moving beyond that, if, as I understand what the government is suggesting, go back to the military commission and the military commission determines that petitioners here are superfluous to the representation, that would leave in place all of the findings and orders by the military commission and by the CMCR, which affirmed it, that petitioners acted lawfully, that they face professional sanctions for their conduct. In effect, there is a pending motion unresolved for sanctions, disbarment from the military commission bar, which would have the effect of causing petitioners to lose their clearance, which would have the effect of petitioners caught. So what about the relief you're seeking is that you don't want them to be forced to go back to represent Mr. al-Nashiri? And if that's not going to happen, why would we need to get to any of the other issues? It is certainly the result that we are seeking, but if that result happens without the vacature, without recognition by an order from this court, relief from this court, clarifying or correcting, I should say, the CMCR's determination that petitioners acted unlawfully when this all happened, that they could be subject to sanctions, which are pending and unresolved, if it goes back just today on the ground that today it's superfluous, today it was unnecessary. And by the way, their representation was not necessary to the defense even at the time. But what's on the record today are findings, repeated statements by the military judge that petitioners acted unlawfully, which could have, and of course we would dispute that they should, but absolutely could have serious professional consequences. That wouldn't be the case. We're tied up with the other case, right, with Mr. al-Nashiri's petition. If we were to grant his relief, then your problem is taken care of as well. As I understand it, if this court were to grant everything that petitioners in the subsequent case are asking for, a vacature of all of the military commission's orders, vacature of the CMCR's view of that order. How about vacature of the orders by Judge Spath after he applied for the Department of Justice position? Not as broad as you're talking about. I think that they're asking for that in the alternative. The intermediate positions that petitioners are asking for do not give the relief that we would need to make this case, as I understand it. I would concede that if this court were to say that everything that Judge Spath did regarding petitioners were vacated, the CMCR's orders regarding that were also vacated, and General Baker's order excusing the petitioners were remained in place, I believe that would give us what we were looking for. But that is, we really need petitioners to get everything they're looking for in the subsequent case. So just to continue a little bit on Judge Griffith's question, couldn't you, the government's argument is the new military judge can provide, you need to ask the new military judge first. Yes. So why couldn't you ask the new military judge also to, in addition to ruling in favor of your clients, also vacate the orders that you're worried about? A couple of reasons. First of all, although the government has suggested to my degree that we are superfluous today, I've seen nothing from the government that would suggest that the orders of the military commission rest in other grounds that we acted unlawfully. Right, but your point is you could make that argument to the military judge. We could make that argument to the military judge, but the CMCR, the appellate body there, has already held that what Judge Spafford was correct, and it's that ruling that brings us here today. So I do, I appreciate, we recognize that mandamus is an extraordinary remedy, but mandamus is the appropriate remedy where there is coercion, and here, because of how the cases come to this court, there are collateral consequences that will not go away. Will not go away. We do not have adequate alternative means simply by going back to the commission today and saying today we are superfluous. That will not, at page 389 of the underlying record, there is a pending motion to disbar which rests on the predicate findings that would not be disturbed under the course that Your Honor has suggested. Okay, well, do you want to go ahead and make your argument then about the plain language of the statute? Absolutely. Thank you. Thank you, Your Honor. Rule 505 D2B says who is the decider when counsels seek to withdraw, and the answer to that question is the chief defense counsel, and the chief defense counsel is not a mere functionary in the government. This is a position created by Congress held by a high-ranking general whose job is not to be an advocate. The chief defense counsel is not like a U.S. attorney who is essentially the lead attorney on any prosecution the government brings. The chief defense counsel's job is to supervise, facilitate, and supervise and facilitate the representation of defendants in that facility, in the military commission system. That is the entity that Congress chose to have authority in this area. Again, it is not a typical advocate, and it makes all the sense in the world that Rule 505 vests that authority with the general. But if there were any doubt about that, one need only look at the previous version of Rule 505, which the CMCR inexplicably read as if it had not been amended. There was a dispute between the CDC, the chief defense counsel, and the military judge in a case called Cotter, about who had the authority to dismiss counsel. The military judge thought that it had the authority. The CDC thought it had the authority. Whatever the right answer was under that old rule, the amended rule unmistakably excises from the rules altogether the military judge's authority in this area. And if it's helpful to you, please. Let me understand. Is your position that assistant counsel then are fungible? Assistant counsel? This is an administrative task. So if you can't use your clients, just plug in some other people, and there's no problem. Yes, that's certainly one reason why our position is correct. So the objection would have to come from lead counsel, that no, I've been working so closely with these two assistants that plugging in two others will just disrupt my preparation? I'm trying to understand how you see this proceeding. You've been working for three years with these people, and all of a sudden they're removed. Yes, Your Honor. Well, the way that this proceeded tells the tale of why we are here. No, but I'm trying to understand your responses to the other judges in terms of your brief says plain text, structure, history, Cotter, end of discussion. Yes. So I'm just wondering practically what happens and whether that was what the court was concerned about as well. Yes. Well, with the case of assistant defense counsel, for example, the CDC would work to detail new assistant defense counsel. I understand that, but I'm just trying to press you to see how far you go. Yes. At one point when the presiding judge says, you know, I have to stop the proceedings. So the lead counsel will have a chance to brief these new assistant counsel so the case can go forward. If I'm understanding the thrust of your question, our position is, and the rule says, and the Secretary of Defense amended it to have this outcome, that if the CDC determines that assistant defense counsel have a warrant withdrawal when they ask for it, then that is what happens. As a practical matter, if I'm understanding it correctly, there would then be the opportunity to put in new counsel. And I think it's important to recognize here that the rule, there's a policy choice to be made there. So, you know, in whom should that authority be vested? I understand. And I'm just trying to press you as to how clear you think it is that the presiding judge has no role whatsoever. Sir, I think it's quite clear, and, you know, I understand Your Honor's talking about this as well. You know, if you look at what the 2007 version of this rule said, which is at Addendum 1 and Addendum 4 of our appendix, the clearest thing that Rule 505 used to say is, upon request of the accused or application for withdrawal by counsel, excuse me, that the CDC may excuse such counsel upon their request under 506B. And 506B says, except as otherwise provided, defense counsel may be excused only with the express counsel consent of the accused or by the military judge upon application for withdrawal. So the old rule used to say, this one goes to the military judge. The new rule completely removes that. In the context, in the aftermath of the case in which that was the key question, the government says that maybe it was an oversight. Maybe they didn't mean to excise the military judge's role in this case. It couldn't be much clearer. And if I could just finish the point, it's the proposed amendments to this rule that are currently in place impose a sea of redlining, which is in the back of our reply brief, to supposedly, as the CMCR say, clarify that the rule that existed in this case actually meant that no, the military judge saw the authority. The redlining it took to make that happen is substantial. Wait, I'm sorry. The revisions are designed to give the military judge that authority back? Is that what you just said? The revisions, which are just proposed and not necessarily – Yeah, that's what I meant. The proposed revisions would do what? Yes, Your Honor. If you – Yes, what? It's in the back. No, no, I know where it is, but I just didn't hear what you said it would do. Yes. Would it clarify that the military judge does have to approve it or doesn't? The answer is absolutely yes. Absolutely yes, why? Absolutely yes, why? Because it says, for example – No, no, no. It would make clear that – it would change the rule that you think now exists. Is that right? Correct. Okay. To avoid a case like this. Is that your point? Correct. Again, it's a proposal and not one that – I understand. Let me just ask you two questions about this. Number one, you know, when you read the government's brief, one might get the impression that the government's concern here is that the Chief Defense Counsel, you know, is sort of an advocate for the detainees. And Judge Spaeth seems to have that impression too. What – and your argument is, no, he's appointed by the President, confirmed by the Senate, right? Correct. And he's statutorily required to protect the – to ensure that all the detainees have zealous defense counsel, right? So is there any evidence in the record at all that sort of counters the government's suggestions that we need to worry about the independence of the defense counsel, Chief Defense Counsel? Like, for example, has the Chief Defense Counsel ever rejected a motion to withdraw, an application to withdraw? I'm not – I don't know the answer to that question. But I do know that the Commission's own rules of court expressly acknowledge and recognize that it is the Chief Defense Counsel whose job is not to be an advocate, but to facilitate the representation of defense. And the – and, of course, General Baker was held in contempt and confined into quarters and sanctioned. And the lower court, the DDC, reversed all of that as exceeding the – as being improper and exceeding the military judges of authority. The – and, again, the Chief Defense Counsel does not act – does not sign pleadings, is not a lawyer, does not come up with defense strategy. It is a different kind of role that the Secretary of Defense in – that Congress and the Secretary of Defense trusted. And, again, if the rule was going to be changed, that would be the Secretary of Defense's prerogative. But they changed it to give more power to the CDC than might have been assumed. So let me ask you one other question about – you're talking about how clear the rule is? Yes. Both sides seems to think that when – and this may not be a question we have to decide, but I'm just curious. Both sides seem to think that when there is an application for withdrawal, which is what happened here, that the Chief Defense Counsel has to make a good cause showing, right, a good cause finding. In other words, they can only grant for good cause. Is that your view? The rule – the rule – the rule I think most accurately read defines the chief – the CDC's determination to be good cause when it's – when it's – when it is made. But in this case, General Baker's excusal order found that there was good cause for it. No, I understand. But did he need to make that finding? Under your interpretate – under your reading of this rule, was it enough that – that there was a, quote, application for withdrawal? In other words, there's an application for withdrawal. Chief Defense Counsel Baker could have granted it without making any finding, correct? Isn't that right? I think the custom of the office and one that we have no quarrel with is to determine whether or not there is good cause. I know – I know that. That's why I'm asking you the question. But that's not the way this thing reads. It says – it says – it says little i says for application for withdrawal. And then ii says for other good cause show. Yes. Other suggests that application to withdraw is good cause. Isn't that the way you read that? Well, I think that is one reading. But I think there are two permissible readings in this case. You do? But either clearly entitles us to the relief. Well, yeah. I mean, you're totally right. Even if good cause is not required, he made a – it doesn't really make any difference in terms of the outcome, right? Yes, that's the main intention I would like to leave you with. Okay, right. I see my red light is on. I'd like to speak a little bit about the equities, but I can save that for rebuttal. Excellent. Why don't you do that? Thank you, Your Honor. Good morning. Good morning. May it please the Court. This Court should deny the petition for writ of mandamus because petitioners have an adequate alternative means to obtain the relief they seek. Before we get to adequate alternative relief, are you defending the CMCR's reliance on Rule 505 D2B? Yes. You're defending that? Yes. The U.S. CMCR – Why don't you start out by responding to counsel's argument about why this language is crystal clear, given not just the language but also its amendment history? Well, petitioners cannot demonstrate clearly and indisputably their entitlement to the writ under this rule because every judicial decision to have considered this rule – No, no, no. I asked you about the language of the rule. We think that the authority of the – Just stick with the language of the rule for a minute, okay? We think that the – Let me just finish my question. His argument is that the rule for military commissions is different from the rule for court-martials because the latter has a specific requirement that the withdrawal be approved by the military judge. And indeed, that that requirement used to be in the rule for military commissions. That's his argument. Is that wrong? Yes. It is. What is wrong about that? The authority of the military judge to review the excusal of the decisions of the Chief Defense Counsel is preserved in the language for other good cause shown on the record. The record is the record of the judicial proceedings. Wait, wait, wait. Where is that in the rule? In the rule? Yeah. What? 505 D2B2. And it says – Are you looking at the rule for – Military commissions. For military commissions? Yes. Yeah. And it says that for a defense counsel to be excused, they must show good cause on the record. And the – Wait, wait. No, it says – look at little i. Why don't you start with little – the first little i, okay? It says upon the request of the accused, right? Yes. Or application for withdrawal. That's what this one is, right? Yes. Application for withdrawal. Correct? Yes. So how do you get to little two at all? Because of the word other. The word other connects the phrase for other good cause shown on the record with the request and the application. Other – But it says or before. But other connects the two, even if there's an or. In order to give other meaning – Wait a minute. Wait a minute. Wait a minute. So you say that – you say that – but this is all – this all refers back to – this all refers back to an authority competent to detail such counsel. So we're talking about the chief defense counsel. This whole thing is about the actions of the chief defense counsel, isn't it? No. We agree that the chief defense counsel makes the initial determination whether to excuse the defense counsel, but then the authority of the military judge is preserved in 505D2B because there's the language for other good cause shown on the record. Okay. So you think that two – the way we should read two is – you read this this way. Here's the way you read it. Or application – or application for withdrawal by such counsel for good cause found by the judge, right? That's the way you read that. No, we read that as saying that first the chief defense counsel makes the initial determination, but then there's judicial review. And where is the word judge in little i? On the record. Not in little i, but we think – Where? Other good cause shown on the record connects the – Oh, you mean the record says that refers to the judge. Yes. But it – The government agrees – That's your – okay, fine. The government agrees that there are different ways that you could interpret the rule. But the better interpretation, the interpretation that's endorsed by nine judicial decisions from eight different judges, the interpretation that avoids the odd consequence of permitting a defense counsel to be excused on the eve of trial, and the interpretation that's consistent – Excuse me. What about counsel's argument that this rule used to expressly require the judges, the military judges' involvement, but that was deleted in 2010, and now there's an effort to put it back in again? It was actually deleted in 2009. Okay. And in 2009 – Well, that can't be – you're right. But it was deleted, correct? Correct. Okay, so what – how do you – how does that fit into your thinking? A 2009 Department of Defense memorandum that explained the changes that were made to the Rules for Military Commission in 2009 and codified in the 2010 manual indicates that Rule 506B and the cross-reference to 506B were removed as a byproduct of the restructuring. Were what? Removed as a byproduct of the restructuring that was done to Rule 506 in order to provide defendants greater latitude in their choices of defense counsel. But in the government's view, the removal of 506B and the cross-reference to 506B did not remove the authority of the military judge to make the excusal determinations. And that's because we think that were the Secretary of Defense going to strip the military commission judges of the authority that's possessed by every court-martial judge, then he would have said so explicitly on the face of the rule. And we know this because in the 2010 manual for military commissions, upon which petitioners rely, the Secretary of Defense departed from the Rules for Court Martial three times. Once in Rule 703, once in Rule 9110, and then Military Commission Rule of Evidence 412. And in each of those times, he said explicitly on the face of the rule that he was departing from the court-martial rule and that he had made a determination that applying the court-martial rule in the military commission – Was this a scrivener's area error? That it was unnecessary. Because on the plain language of it, if you're speaking the plain language, all you need to do is apply for withdrawal. That 506 was unnecessary to preserve the military judge's authority. Even though they took it out? Excuse me? Never mind. No, that it wasn't necessary. We have many cases in this court which say that when interpreting statutes, a deletion of language means that that provision is no longer operative. No matter what the courts say about it. Although there are different ways you can interpret the rule, I think there are other rules of statutory construction that apply here that would say that the better interpretation of the rule is this rule that – What other rules of statutory construction? For example, the rule of the absurdity doctrine, that this court should not read the rule in a way that would permit – So why would that be absurd to read this in the power of the chief defense counsel? It would permit the defense counsel to be excused even on the eve of trial or, for example, immediately before the cross-examination of a critical government witness. Before that witness was about to be repatriated to another country pursuant to his pretrial agreement, as occurred in this case. But even if this court concludes that Rule 505d2b is silent with respect to the role of the military judge, then that rule is supplied by Rule of Court 4. Rule what? Rule of Court 4. Aren't those trumped by the military commission rules? We don't think that they're inconsistent. And the U.S.C.M.C.R. read them harmoniously. And the U.S.C.M.C.R.'s decision does not arise to the level of judicial usurpation of power that would warrant the extraordinary writ of mandamus because the U.S.C.M.C.R. was acting within its authority to interpret those rules, and that interpretation was not clearly and indisputably correct when judicial review is required by every federal court in the United States and specifically required by the rules of court in this case. Rule of Court 4 was written by chief judge of the trial judiciary at the time, Judge Pohl. And Judge Pohl interpreted his Rule of Court twice in the 9-11 case, once in Appellate Exhibit 4AA and again in Appellate Exhibit 6F. And there he said that to the extent there was any question about what Rule of Court 4 meant, that he meant that it required the approval of the military judge of, quote, all defense counsel, end quote, before a defense counsel may be excused. And so as this court has recognized, every circuit court in the United States defers to the trial courts in their interpretation and enforcement of their local rules, and petitioners provide no sound basis upon which to do that here. So even if this court concludes that Rule 505d2b is silent with respect to the role of the military judge, then Rule of Court 4 supplies that role. Petitioners also have an adequate alternative means to obtain the relief they seek, and that's by reapplying for withdrawal when the military commission proceedings resume. And petitioners have a reasonable basis upon which to reapply for withdrawal, even if they are unable to do so. But their position is that they've already withdrawn and their withdrawal has been approved. That's their argument, and they're also arguing that there are orders that the military judge issued subsequent to that that need to be vacated. Every judicial decision to have considered that argument, including the one by Judge Spath, concluded that that was incorrect, and they are required to comply with the orders of the military court until they obtain a stay of those orders or until a reviewing court overturns those orders. And that was not what they did here. So the military judge considered the Chief Defense Counsel's opinion, as well as the petitioner's reading of the rule, and rejected that, and then explained that they were required to continue reference. Who did the CMCR? The CMCR did as well, rejected that interpretation on October 11th of 2018 in its merits opinion, and Judge Spath also issued the same orders interpreting the rule in 389a, 389j, and 389f. You heard the questions we asked Counsel Petitioner. If we believe, this is a hypothetical question. If we were to grant Al-Nashiri's motion in the next case, if we were to grant that and vacate Judge Spath's orders, every order from the date he applied for a job, would that moot this case? No. We think that the U.S. CMCR's merits opinion from October 11th, 2018, would remain in place. And that's because... Which one? Give me the date again. Sorry. October 11th, 2018, its merits opinion would remain in place of the CMCR. But the government... No, no, no. I understand your argument with that, but wouldn't that moot... Why is that responsive to my question? Well, it would... If you rule that Judge Spath were disqualified and you vacated his orders, that would moot it with respect to Judge Spath's orders, but not with respect to the U.S. CMCR's decision. But what about with respect to those CMCR orders that rejected the disqualification argument? Yes. Yes, but the U.S. CMCR's order also rejecting the interpretation of Rule 505 D2B in Rule of Court 4, rejecting that interpretation would remain. Right. Yeah, that I understand. Yes. I take your point about that. Okay. Go ahead. But the government's interest with respect to petitioners is not to seek to compel them to continue representing El-Nasheri. It's not to punish them for violating the military commission's orders requiring them to continue the representation. It's not to file ethical complaints against them. The government's interest with respect to petitioners is simply to ensure adequate representation of El-Nasheri. And as long as it's some defense counsel, it matters not to the government, whether it's these particular defense counsel or other defense counsel who are providing that. Well, why not? The government could have done this a long time ago.  Because at the CMCR, even though Captain Miser had been recalled to active duty in May of 2018, he told the— In what? May when? May of 2018. He told the U.S. CMCR that he was not able to file any briefs before the U.S. CMCR until he obtained the consent of El-Nasheri to do so. And that's why the U.S. CMCR in its May 23, 2018 decision said that there was still a, quote, that Captain Miser wouldn't be representing El-Nasheri. And then Captain Miser submitted a declaration to the U.S. CMCR explaining that, in his view, he would not be competent to represent El-Nasheri until at least late June 2018 because of the press of other obligations that he had to address. Has that issue now been resolved? We believe it has because— When was it resolved? By Captain Miser's representation, continued representation of El-Nasheri in this court today. We believe it has been resolved because it appears that he is going to continue to represent El-Nasheri and can provide that adequate representation. And as long as he provides that adequate representation, then we believe that a military commission could grant an application for withdrawal on the ground that petitioner's assistance is no longer needed. And this court asked also whether Judge Spath had ever— or excuse me, the Chief Defense Counsel had ever denied a request for withdrawal of a defense counsel. And the answer is yes, he denied the request of Captain Miser, who was then Commander Miser, to withdraw. And, in fact, Mr. Kammen filed a motion asking the military commission to abate the proceedings until Captain Miser had been, quote, restored, end quote, to the military commission team to defend El-Nasheri. And Judge Spath denied that motion in Appellate Exhibit 348L, explaining that permitting Captain Miser at that time to withdraw wouldn't disrupt the military commission proceedings because Captain— not Captain Miser, but El-Nasheri was represented by at least five additional defense counsel, which explains that regardless of whether they're the lead counsel or not, one of the factors that the military commissions consider in deciding whether to release a defense counsel is whether they will have adequate representation. And we believe that adequate representation is available in this case. And the government respectfully requests that this court deny the petition for writ of mandamus. Thank you. Thank you, Your Honor. Just a few quick points in rebuttal. I'll be quick on the text. There's nothing about an initial determination in Rule 505 as amended. There's nothing about a judicial determination. What there is in the old Rule 505 is an express requirement for military judge determination upon a counsel's request to withdraw. But if you go with the plain reading, as Judge Tatel was pressing upon you, all it takes is a request of the accused or an application for withdrawal. If there's an application for withdrawal, the CDC may excuse. Now, what will prevent the parade of horribles that your friend spoke about? Last-minute withdrawals. First, yes, the CDC is a general and the second highest-ranking lawyer in the Marine Corps. He serves at the pleasure of the President and can be removed for any reason or no reason. As I appreciate my colleague's remark that he has denied requests to withdraw in the past, this is a serious office held by a high-ranking official. There's always a policy decision to be made about who should be the decider of things. Here, Congress created an office that is held by someone who's more than capable of not serving as an advocate, not serving as, say, the U.S. attorney trying to decide whether or not to somehow stop a case, but as someone whose job is to facilitate representation. General Baker's record in that regard has been admirable. If the Secretary of Defense wished to change the rule, it could. And, of course, if the President or the Secretary of Defense wished to remove General Baker, they could as well. This is not a mere government functionary. This is a high-level, highly qualified, highly decorated person who makes these decisions. And what's your answer to her argument that if you leave it up to him, that is the chief defense counsel, that at the very last minute, at a very inopportune moment during a trial, he could relieve defense counsel of letting him withdraw and disrupt the trial? My answer to that is there's no reason to think that's the case. And if a CDC did that, if General Baker did that, I don't think he'd be very long in his position because he could be removed by the executive. That is the check on his power. Okay. And what's your answer to her argument that the phrase in double I for other good cause shown on the record, that on the record means by the, that that's the kind of language you use for an action by a judge? So, two points. One, of course, we're in single I, not double I. I know. And second. But she says you have to read them together. I know. You have to just bear with the hypothetical for a minute. Yes. So what do you think on the record means? On the record means you look to who the decider is. It's the CDC. That's what it says, right? The detailing authority who is the CDC. And if we're in a situation in which it's not a request to be accused or an application for withdrawal, then other material establishing good cause needs to be presented to that decision maker. 505 is a who decides provision. And the answer to that question is clear on its face and particularly clear after the amendment, which had a different decider and expressly did so. Now, I wanted to say something very brief. What about just one more thing? What about she relied on rule of court rule of court four? Yes. What do you think about that? You did, too, actually. Yes, we do. We think it supports us. You do? Sorry. Well, anyway, why is it relevant? So it isn't relevant in the sense that if it disagreed or if it conflicted with what 505 requires, 4.4 and the other rules of court cannot vary the rule. We're talking about a regulation from the Secretary of Defense versus a rule that is promulgated by the commission in this area. So 505 is clear, so you can stop right there. As to 4.4 and 4.2, we lay it out in our brief. There is assistant defense counsel are treated differently, just as they are from the statute, 948K, and the regulation 502F, and now the trial court rule. Unlike the other counsel in the military commission world, there is not the requirement that they seek approval from the military judge to withdraw. Instead, they are functionaries. They are assistant defense counsel who can only serve under the supervision of a more senior counsel. And if you follow rule 4.2 through, it's pretty clear that, unlike the others, who conspicuously do need to go seek approval, the assistant defense counsel are not subject to that requirement. Okay, so let's assume you're right about that. Yes. That your relief is clear and indisputable. Yes. This is mandamus. Yes. So tell us as crisply as you can your best argument for why the government isn't right, that you should take this whole issue to the new military judge. What's your best argument about that? There's twofold. One, of course, we submit that we've already been excused, and this is a question of the decider. I got that. But secondly, and I heard the government say a couple of different things during its argument, but the ones that I noticed were their view and the view of the CMCR and the military commission is that, at the time they were excused by General Baker, they acted unlawfully. And I could quote at length from Judge Spaff's statements, and I can also point you to, in the record, where the motions for sanctions exist, and even if those motions were withdrawn, it is the findings that petitioners acted unlawfully, violated their ethical responsibilities, put them wrongly, unwarrantedly, unjustifiably in danger of sanctions either from state bar, either from the bar of the military commission, or other proceedings. Simply going back now and recognizing, which has always been the case, that they are superfluous and not necessary for the trial to continue does not remove that, does not remove that. And so only this court can prevent that. Only this court can prevent that. I'll be there arguing that the sanctions ought not be issued if this court doesn't, but only this court can prevent that from happening, as it should, by granting us the writ. And while mandamus is an unusual remedy, an extraordinary remedy, the Supreme Court has recognized that it's appropriate for unlawful representations. And I want to stress again, we did not seek to withdraw in this case. When the microphones were discovered, we did not ask to withdraw. We asked for discovery. We asked for cross-examination. We asked for fact-finding. All of it summarily denied. We asked to be able to tell, the petitioners asked to be able to tell their client about the possibility of compromised conversations. Denied. The petitioners obtained an ethics opinion stating that they had a mandatory obligation to withdraw under those circumstances. I understand those arguments. I just want to be clear, though. Your position is once the secretary has promulgated a rule, the presiding judge at the military commission has no authority to set any rule that could be interpreted to require more than what the secretary has required. In the context of 505, 505 says who the decider is. In other words, I'm thinking of district court judges where there are rules of federal procedure. But a number of district court judges have their own additional rules, so when you appear before them in their courtroom, you have to follow their rules. Yes. There are, and as the court is well aware, for example, with the federal rules of appellate procedure, there are some that are mandatory and then there are some that are given to the circuit courts to decide if they want to vary or change altogether. So it's always the decision-maker. Here the Secretary of Defense's decision to decide whether something is optional or subject to change or not. The right reading of Rule 505 is this is a rule, and other rules may be very different. Other systems of rules may be very different. Nothing this court says today about 505 has any necessary application to anything else anywhere. But for 505, text and history show that the Department of Defense, which is charged with administering and promulgating these rules, made a decision to give this to the CDC. If they choose to make that policy, to change that policy decision going forward, that is their prerogative, but it is their prerogative, and they spoke clearly. We ask that the court grant the writ of mandamus. Thank you. Thank you.
judges: Rogers, Tatel, Griffith